argument is people v. Pratt. Counsel, whenever you're ready, may proceed. Thank you, your honor. May it please the court. My name is Patrick Daley. I'm here on behalf of the state. This is a state appeal of a lower court judgment granting a motion to suppress on the grounds that the withdrawal of a hospital following a traffic accident and fatality was constitutionally impermissible. And we are here then today to address that issue. As you can probably tell from the briefs, there's a lot of moving parts as far as issues are concerned in this case. So I may be oversimplifying a little bit. The principal points that I'm going to discuss today are both the probable cause determination and the Birchfield issues and their interplay, in fact. Before getting into that, I do want to give the court an update on Eubanks. I'm not going to get into the Eubanks decision itself. I will say that it is before the Supreme Court. It has the potential of maybe moving a lot of the issues here if the court upholds the facial and constitutionality of that provision in the implied consent statute because that is, in fact, the primary implied consent statute which animated the blood draw in this case. Do you know anything about the schedule? No, I don't. The only thing that I saw online is his document. It's September the 1st. I don't think, it's so early I probably haven't even gotten a briefing yet. So we're looking at probably a fairly lengthy amount of time before we get a resolution to that. This case, as you can see from the briefs, there's a lot of varying opinions that have been coming out from different state courts. This court's next in line. And what we're dealing with here kind of comes from what we call the trinity of cases, if you will, from the Supreme Court. Probably not the end of the line yet. Schumer v. California, where the court had discussed the exigent circumstances for blood draws in the Fourth Amendment context. Missouri v. McNeely, which was the case where the court refused to find that the evanescent nature of blood alcohol constituted in itself an exigent circumstance. But as its most important facet, the application of the Fourth Amendment to blood draws, that the drawing of blood tissue because of the relative invasiveness of the procedure, proposed against breath tests, was such that a war requirement of the Fourth Amendment applied. The court did not get into any real substantive discussion of implied consent laws, other than sort of a corollary to its holding, noting that states have implied consent laws as enforcement mechanisms and they're generally accrued to that particular process of the states, but did not get into any in-depth discussion. That in-depth discussion became more apparent in the main case before the court, Birchfield v. North Dakota. And that's the case where a lot of the discussion took place at the trial court level, and it obviously animates a lot of what we're going to talk about here today. I do want to start with the problem of cause factor. There's an interesting procedural report to this I want to kind of bring up front right now. The defense motion did not raise problem of cause as a challenge, but when the court looks at the record and sees the interplay that went on at the trial court level, there was extensive discussion about problem of cause, because the trial court judge recognized that problem of cause in the implied consent statute was a condition precedent to allow the officer to request or have required or submit to the blood draw at the hospital. Now, what makes this somewhat of a quirky situation is this. Although there's extensive discussion about problem of cause, the court never explicitly ruled on it. Now, we can turn it around in two ways. Either the court chose to bypass it because it didn't come up as a particular issue in the motion to suppress, or perhaps more likely, the court has implicitly rejected the notion that there was not problem of cause and therefore just moved on to the McNeely to this set of facts in that there was no exigent circumstances that would have justified the blood draw. Paradoxically, we don't challenge the notion that there were exigent circumstances. The state had the obligation below to weigh those facts out and really did not do so, other than to just say, here's a man who was transported to Missouri. There's no discussion. He has his court requirement armored about what the state had done to perhaps secure the search warrant during that intervening time period. Our focus here today is mainly, principally, solely, I suppose, on the Fourth Amendment implications of Illinois' implied consent law and whether that implied consent operates as an exception to the Fourth Amendment warrant requirement. Now, if it's true that the court found problem of cause implicitly, that has a potential of perhaps removing that finding from review by this court, only because this is a state appeal and adverse findings against the defendant are not generally reviewable on appeal. However, in light of our discussion of the Mitchell decision from the Supreme Court, and in light of that, of course, attaching the particular significance of a problem of cause determination in its overall discussion of the Fourth Amendment and how consent applies and Wisconsin's implied consent laws, which are largely identical to Illinois', I have to say that I do think that this court is probably going to be required to find and determine that threshold of probable cause before we get into the bottom line. And you're basing that strictly on the broken, on the bottle is your probable cause? Because there's no odor. No, there's no odor. And you can't put it in water or stagger or dark. Correct. Correct. So all you have, you have a broken bottle in your car. We have, we have the, well, the accident, obviously, number one. The officer who testified that he has experience in investigating DUI investigations testified that there was a, the defendant's speech was slurred, that he was exhibiting poor balance, he was unable to clearly answer questions, and then there was the open bottle. So he passed out after that, or was out when he got, did they put him out of the hospital? I think that he was, as best as I could tell from a limited amount of information, the officer testified he went to the hospital right in the morning and was granted. He what? Granted. Or granted. Or something along those lines. And then the criminal was unresponsive after that. I don't know how unresponsive he was. So how'd he get the slurred speech? If he just grunted once or twice? I think he was, I think he was baseless upon airplane or scaffolding at the time when he was investigating. That's an evidence. Correct. That's an evidence. And that's what he testified to. He didn't say exactly what was discussed. It was just related that this is what he detected. You were saying based on the accident earlier? As well as the totality of the circumstances. I thought the case law was pretty clear that you can't, the sole fact that there's an accident does not really enter into. No, that's absolutely right. And that's, the point is that there is more than the sole accident. It's those other factors that the officer observed. So then we can consider the accident because of the other factors? Is that what you're saying? Correct. Correct. And I think the case law supports that, but it does say that the accident alone is not dispositive. Can I ask you, and I'm sure we'll find out more detail later, but was it a single car accident? Or was it, did it hit a tractor trailer? Correct. There was a truck and a tractor trailer, and then one had jackknifed him, and then the other was, I think, the truck that had the, to defend the driver, and then the passenger in that car was the person who died in this accident. So that was, so again, and there's not much more I can say about this. What I'm trying to find out is what kind of evidence was presented at the hearing to show what you're trying to say now, that he had a slurred speech. That was presented. That's what the officer testified to at the hearing, correct. Okay. Yes. And, but there was no testimony as to odor on the breath. There was not odor. So it could have been the passenger was doing all the drinking. That's certainly a possibility, correct. And it's also a possibility acknowledged that a lot of the physical factors that the defendant was exhibiting could have been attributed to the accident. Right. The point we make here is that in this probable cause assessment, it's based upon a factual analysis from a reasonable officer's perspective in that all there may be objectively non-criminal explanations for these particular physical attributes. Was there any evidence as to his eyes? They usually give him glassy eyes. No, there's no glassy eyes. And we don't have any breath. Correct. We just have an accident. Along with the poor balance of slurred speech and the incoherency of his answer. But that was a grunt. No, that was in the hospital, Your Honor. These things were exhibited at the scene of the accident. And he was out of the vehicle. He was out or being in or after the process of extraction, correct. Well, otherwise he wouldn't have any balance problems if he was getting extracted. Well, I know what you mean. I may be over-speaking the evidence here. He did get out of the car somehow. I'm just trying to figure out what was presented at the hearing. These considerations that I'm relating to you were presented. That he was unstable on his feet. Correct. The officer testified to all those factors. And those were the things that the state ultimately relied on during the court's discussion about the probable cause issue. But I do think that that is, I think that if I'm going to attribute the weight I am going to to the Mitchell decision from the Wisconsin Supreme Court, it sort of involves this court perhaps. Yes, sir. I didn't mean it as much as I thought it would. It will determine that totality of the circumstances for consent and advocacy. You have extra time, Nick. Yes, okay. Thank you. Thank you, counsel. Counsel. May it please the court. Mr. Braley. My name is Lawrence O'Neill, representing Ricky Pratt in this state appeal. I ask this court to affirm the trial call to order suppressing the results of the blood draw for Mr. Pratt, who was unconscious at the time following the motor vehicle accident. In argument, with respect to the first part of argument two, I raised the issue of there was insufficient probable cause to conduct the search. And Your Honor has discussed a few of the indicia of intoxication that the officers testified to at the hearing. One of them was he had, my client eventually had slurred speech, and he could not answer straight questions. And that he had trouble, he needed assistance walking from the car to the ambulance. But to submit to the court that this is not established probable cause that he was intoxicated, because disorientation and confusion are normal reactions to having been in a major motor accident like this, that eventually caused him to lose consciousness. And I cited a case, Peeper v. Bulger, that makes that point. But as Justice Welch mentioned, there was no bloodshot eyes, no smell of alcohol. The detective, Pettosee, who was at the hospital and directed the blood draw, testified that there was no signs of intoxication at the hospital, no intoxication of Mr. Pratt at the hospital. And there was this bottle of Crown Royal in the car, but there was no indication of how much was drank out of the bottle or whether the passenger had consumed the alcohol. So therefore, the totality of the circumstances, there was insufficient evidence to establish probable cause that Mr. Pratt was intoxicated to justify a blood draw. Well, the second part of Argument 2, the probable cause argument, is submitted to the court that the overall applied consent statutory scheme that deem an unconscious driver as not withdrawing the consent to a chemical test creates a pro se categorical exception to the warrant requirement in violation of Missouri v. McNeely. As mentioned, the court in Missouri v. McNeely rejected altogether a categorical pro se approach to an exigent exception to the warrant requirement. The court held that whether a warrantless blood draw of a drunk driving suspect is reasonable, whether it is reasonable, must be determined case-by-case based on the totality of the circumstances. Under McNeely, any statute that allows for a blood draw that precludes a case-by-case determination based on the totality of the circumstances is unconstitutional. Thus, the unilaterally complied consent laws, which allows blood draws in all cases where an unconscious driver is involved in a fatal vehicle accident, is unconstitutional under McNeely because it creates a blanket exception to the warrant requirement without a case-by-case determination based on the totality of the circumstances. Under McNeely, the unconscious driver clause can only be constitutionally applied when case-specific circumstances prevent law enforcement from getting a warrant before the evidence is destroyed by the natural dissipation of evidence. And you don't think there's anything about this case that would show exigent circumstances? No, Your Honor, and I believe the State has pretty much conceded that. Yes, that's correct. No, that's correct. That's correct. So, in some way, McNeely, the application of the implied consent laws creates an unconstitutional per se exception to the warrant requirement in cases involving the warrantless blood draw from an unconscious driver because it allows for a blood draw in all cases where an unconscious driver has been in an accident involving the fatality or personal injury of another without a case-by-case determination of the totality of the circumstances. But they're arguing a very unusual argument, I think, in that they have not withdrawn because of the fact that he is unconscious, he has not opted to withdraw. That's correct. His consent. That's correct. And I believe, which goes to my second part of this argument, I think that ties in, that this Court should reject the State's other argument that the State's implied consent laws operate as a consent exception when the driver is unconscious. And he did not withdraw the consent, obviously, but the consent is still valid. And I encourage this Court to reject that approach because treating the unconscious driver provision as an irrevocable implied consent does not comport with the consent exception requirements because such treatment requires an analysis of the voluntariness of the consent based on the totality of the circumstances. It is well established since the U.S. Supreme Court case, at least since the U.S. Supreme Court case of Schneck law of 1973, that consent must be freely and voluntarily given under the totality of the circumstances. Thus, implied consent laws do not operate as a consent exception because there is no showing that the consent was given voluntarily under the circumstances. Implied consent laws do not obviate the constitutional necessity for consent to be voluntarily given. Well, as implicit in that, the opportunity of the person who the State claims has given implied consent, that that person has the opportunity to withdraw that consent. There may be consequences, administrative and civil. That's correct. But the whole concept of consent, it seems to me, is somewhat based on the ability to withdraw that consent even if there are adverse consequences. Adverse civil consequences? Civil consequences, evidentiary consequences. We're not talking about criminal consequences. But there are administrative consequences such as suspension of license and things like that. That's correct. So we're not saying that it need be free. My question is not implying that it need be free of adverse consequences. It's implicit if one is given consent that one has the ability to withdraw. Well, that's true. That's true. One is consenting, driving on the road to either submit to a blood draw or a blood test or face the consequences, face the civil penalties or the evidentiary. So your argument essentially is if one, because of physical incapacity, is not capable of considering whether to withdraw the consent, that's part of your argument that this should be, that the circuit court was correct in suppressing this. Well, Your Honor, my argument is more that the consent to submit to a test or to receive civil penalties or evidentiary consequences, that's for the civil proceeding, for the civil proceeding, but for purposes of Fourth Amendment exception, consent exception, that it doesn't meet the voluntary requirements of a voluntary consent that when the person drives that he is consenting to an intrusive blood draw in the event that they're unconscious. Because it's a blanket per se. Well, that's a hard argument. Yes, that's correct. In effect, this is enacting a consent exception to the Fourth Amendment by legislative fiat, by legislative fiat. It would be no different than a city enacting consent to have police search the homes of any residents who agree to live in their city. In other words, consent has to be voluntarily given. It cannot be decreed. For purposes of the Fourth Amendment, it cannot be decreed by statute. Just quickly, I know Mr. Deal would probably talk about Birchfield. This idea that the implied consent must create a consent exception, that somehow Birchfield supports the idea. And I will discuss this in my brief. But I think Mr. Dale's argument misplaced, it wrote Birchfield incorrectly. Yes, please, Your Honor. Because Birchfield does not support, Birchfield approved implied consent laws, generally speaking, for purposes of civil procedure, civil penalties and evidentiary consequences, not for a Fourth Amendment exception. It's a consent exception. Thank you, Your Honor. Thank you, Counsel. Counsel? Justice Chambliss, everything about this case is sort of unusual. It has been probably fun with. Yeah, it's very intricate. It is. It is. A lot of this comes down to, Your Honor, I think if I had to reduce this to a single equation, it kind of comes down to this. Does the consent aspect relate to, as the state's cases adhere to, the conscious decision to operate a motor vehicle on a highway in the state at a time when they have probable cause to believe they're under the influence of alcohol? Or does it come down to a Fourth Amendment analysis that has to look at the time in which a tissue is going to be extracted from the driver? Okay? And that's kind of maybe a coarse way of sort of parsing this into the constitutional question involved. Unfortunately, Birchfield, like most Supreme Court decisions, is always very cautious not to say more than it needs to, so it didn't really answer this question directly. But aren't you saying then that you would consider it at the time where someone is maybe criminally liable? Because if you're talking about at the get-go, then wouldn't you still be then imposing a criminal sanction against somebody who voluntarily made that decision? Well, I don't think the Supreme Court viewed it in that terms. If you look at Birchfield, their criminal sanction was for the act of refusal. In other words, refusing was itself an independent criminal violation. And that's why it sort of, in one instance, refused to find that the implied consent was valid consent, because one did not believe that the threat of criminal sanction, being that you could be held criminally liable for the mere act of refusal, could allow for a valid consent to be given under those circumstances. That there are criminal penalties that may be ancillary to the civil ramifications is only going to play in all cases, including everything that's been confirmed for the U.S. Supreme Court. If it were the case that it viewed all ancillary possibilities of a DUI arrest and implied consent law application to be criminal, in the sense that perhaps you're considering it, Your Honor, then I think the court would have at the outset just largely struck down implied consent laws as unconstitutional in their face, because they are going to be an implied consent of Fourth Amendment context driven by the fear of criminal consequences for refusal. And that's how I interpret Birchfield, in this instance, when it discusses criminal penalties, which is civil administrative penalties. Now, if this is a hard case, because, I mean, what you have here is the notion of the defendant argues that we have here a statute that may be unconstitutional because it provides for irrevocable consent. But that really kind of requires applying out, if you will, of the Fourth Amendment principles that are at stake here. If you look at all those implied consent law, the People v. Jones Supreme Court case, which predates McNeely and all these others, discuss implied consent law and determined that in its original interpretation, the state had given the defendant a right to refuse testing. There was a right that was given to the defendant. It was explicit in the early versions of the implied consent statute. But when I amended the statute, and it's now pretty much in linguistic alliance with most other states, that the opportunity to withdraw language is there, which the Supreme Court interprets as essentially advocating the right to refuse consent. That's in line with the South Dakota v. Miller decision of the U.S. Supreme Court, which held that there is no constitutional right to refuse testing in implied consent law. The context there was what we now are well aware of being the law, that if you refuse to take a test, the state can use that against you as evidence of consciousness of guilt. But at least the cases that the court, that the state relies upon here, sees that language, and I would concur, is that the Supreme Court is not attaching constitutional significance to the opportunity to withdraw consent or to refuse testing. So what we have here, I think, is in line with Mitchell, that the consent occurs at the time under a well-established structure, architecture, if you will, of implied consent laws, which state that you have given consent by undertaking this particular action. It's not implied consent because the state provides for mechanisms in which that consent can be withdrawn. All right? The whole purpose of the warning to motorists that we see in DUI cases is to implement that very notion. These are the consequences that we're going to provide to you when you take this test. Okay? It doesn't have constitutional significance, but it does indicate that defendants still retain the right under those circumstances that would lead to that situation to decline testing for fear of those penalties. Now, if I can just finish this, one last thought here. In the instance of the unconscious driver, however, much as Mitchell said, by the act of getting behind the wheel of a car, probable cause, intoxicated, accident, no one has that opportunity, if you will, that the state accorded by its own fiat, if you will, because there's not a constitutional right to be able to withdraw that consent. Then the defendant has put himself in that situation as, in essence, forfeit his right to invoke that particular clause that would be for withdrawal of consent. And therefore, I think at the Wisconsin's analysis matter, the answer is the irrevocable consent issue in this case. Does the Court have any further questions for me? Thank you for the extra time. I appreciate it. Thank you. We appreciate the briefs and arguments of counsel. We'll take this case under advisement and issue it.